# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| PATRICIA PLUNKETT,<br>    Plaintiff | )<br>)<br>) | |
| v. | )<br>)<br>) | Civil Action No. 2:10cv00041<br>**REPORT AND**<br>**RECOMMENDATION** |
| MICHAEL J. ASTRUE,<br> Commissioner of Social Security,<br>    Defendant | )<br>)<br>) | <br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Patricia Plunkett, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Plunkett protectively filed her applications for DIB and SSI on March 1, 2006, alleging disability as of March 1, 2005, due to numbness of the hands, inability to sit for long periods and spasms in the neck, leg, hips, back and shoulders, bursitis of the right hip, pain in the left foot, memory loss and right knee pain. (Record, ("R."), at 11, 101-03, 106-13, 125, 156.) The claims were denied initially and on reconsideration. (R. at 49-51, 57, 58-59, 61-62.) Plunkett then requested a hearing before an administrative law judge, ("ALJ"). (R. at 63.) The hearing was held on March 3, 2008, at which Plunkett was represented by counsel. (R. at 25-43.)

By decision dated March 28, 2008, the ALJ denied Plunkett's claims. (R. at 11-24.) The ALJ found that Plunkett met the nondisability insured status requirements of the Act for DIB purposes through March 31, 2009. (R. at 13.) The ALJ also found that Plunkett had not engaged in substantial gainful activity since March 1, 2005, the alleged onset date. (R. at 13.) The ALJ determined that the medical evidence established that Plunkett suffered from severe impairments, namely disc disease affecting her neck and back, but he found that Plunkett did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.) The ALJ

found that Plunkett had the residual functional capacity to perform the full range of sedentary work.[1] (R. at 14.) Thus, the ALJ found that Plunkett could perform her past relevant work as an electronics assembler, as actually and generally performed. (R. at 24.) Therefore, the ALJ found that Plunkett was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010).

After the ALJ issued his decision, Plunkett pursued her administrative appeals, (R. at 6), but the Appeals Council denied her request for review. (R. at 1-5.) Plunkett then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Plunkett's motion for summary judgment filed February 1, 2011, and the Commissioner's motion for summary judgment filed March 4, 2011.

*II. Facts and Analysis*[2]

Plunkett was born in 1953, (R. at 101, 106), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). She obtained her general equivalency development, ("GED"), diploma. (R. at 131.) She has past work experience as an

---

[1] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2010).

[2] The relevant time period for determining disability is March 1, 2005, the alleged onset date, to March 28, 2008, the date of the ALJ's decision.

order picker, an electronics assembler, a home care provider and a production inspector. (R. at 30, 42.) Plunkett testified that she suffered a work-related back injury by picking up heavy boxes while working as an order picker, and she stated that she was currently receiving workers' compensation benefits. (R. at 30.) Plunkett testified that she could no longer work due to constant, severe neck, upper and lower back and bilateral shoulder pain. (R. at 31.) She stated that she took Norflex and Ultram and had to lie down daily up to four times for an hour each time. (R. at 36.) Plunkett testified that housework aggravated her pain and that her niece and granddaughter had performed such chores for her for the previous year. (R. at 36-37.) She stated that for the previous six months she was unable to lift a gallon of milk and that she had begun to drop things. (R. at 37.) Plunkett testified that she had to change positions approximately every 10 minutes, noting that sitting for more than 15 minutes caused back pain. (R. at 38-39.) She stated that she also suffered from bursitis in both shoulders, which caused neck pain and headaches that required her to lie down. (R. at 38-39.) Plunkett testified that she had bursitis in the right knee that had begun six months earlier. (R. at 39.) However, she stated that her main problems were her neck and back pain. (R. at 40.)

Barry Steven Hensley, a vocational expert, also was present and testified at Plunkett's hearing. (R. at 41-42.) Hensley classified Plunkett's past relevant work as an electronics assembler as sedentary and semiskilled and her work as a home care provider and as a production inspector as light[3] and unskilled. (R. at 42.)

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

In rendering his decision, the ALJ reviewed records from Dr. William C. Ward, M.D.; Lewis Gale Physicians; Dr. Murray Joiner Jr., M.D.; Carilion Roanoke Memorial Hospital; Carilion Family Medicine; Dr. Michael Hartman, M.D., a state agency physician; Louis Perrott, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychologist; Dr. Steven Hill, M.D.; Rocky Mount Chiropractic, Inc.; Kim Skillen, D.C.; Lucas Therapies; and Dr. Neal Jessup, M.D. Plunkett's attorney submitted additional medical records from Carilion Family Medicine; Roanoke Rehabilitation & Wellness; and Roanoke Community Hospital to the Appeals Council.[4]

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is

---

[4] Since the Appeals Council considered these records in deciding not to grant review, (R. at 1-6), this court also must consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). However, I note that some of the evidence considered by the Appeals Council does not relate to the period on or before the date of the ALJ's decision. That being the case, this court will consider only the evidence submitted to the Appeals Council that does so relate. *See* 20 C.F.R. §§ 404.970(b), 415.1570(b) (2010) (stating that if new and material evidence is submitted to the Appeals Council, it shall be considered only insofar as it relates to the period on or before the date of the ALJ's hearing decision); *see also McGinnis v. Astrue*, 709 F. Supp. 2d 468, 471 (W.D. Va. 2010).

not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Plunkett argues that the ALJ erred by failing to accord proper weight to the opinions of her treating sources. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-12.) Specifically, Plunkett argues that the ALJ erred by failing to include the restrictions imposed by Dr. Louis J. Castern, M.D., into his residual functional capacity finding and by failing to explain his apparent rejection thereof. (Plaintiff's Brief at 8-10.) Plunkett further argues that the ALJ erred by rejecting the opinions of Kim Skillen, D.C., a chiropractor, simply stating that he was not an acceptable medical source. (Plaintiff's Brief at 10-12.) Lastly, Plunkett argues that the ALJ's physical residual functional capacity finding is not supported by substantial evidence because the ALJ failed to consider her bilateral upper extremity impairments and their effect on her ability to perform the full range of sedentary work. (Plaintiff's Brief at 13-15.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

From my review of the ALJ's opinion, I agree with Plunkett's argument that the ALJ did not sufficiently explain his rationale with regard to the weighing of the medical evidence. It is well-settled that the ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion

of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Dr. Castern treated Plunkett for approximately six weeks, beginning on November 16, 2004, the day after her work-related injury, and continuing through December 30, 2004. (R. at 223-35.) Dr. Castern diagnosed Plunkett with suffering from cervical spine strain, right shoulder strain and lumbar strain. (R. at 235.) Dr. Castern prescribed Mobic and Ultram, and he referred Plunkett to physical therapy. (R. at 235.) On November 29, 2004, Dr. Castern limited Plunkett to lifting items weighing up to only two pounds, restricted her from strenuous pulling or pushing, overhead reaching or working more than eight hours a day. (R. at 231.) He also stated that Plunkett should perform her work sitting primarily. (R. at 231.) Plunkett's symptoms waxed and waned throughout Dr. Castern's treatment, which ended December 30, 2004. (R. at 223.) On that date, Dr. Castern stated "this woman is found to have very benign exam with no significant objective findings." (R. at 223.) Dr. Castern continued Plunkett's previous restrictions and noted that she had an appointment to see a physiatrist. (R. at 223.)

While the ALJ's opinion recites the medical evidence from Dr. Castern and Plunkett's other physicians at length, it never states which evidence or opinions he

is crediting or discrediting. The ALJ's residual functional capacity finding does not adopt the findings of any of Plunkett's treating or reviewing physicians in their entirety. Therefore, the ALJ necessarily rejected portions of each medical expert's opinion without any explanation or reasoning.

Plunkett also argues that the ALJ erred by discounting the findings of Kim Skillen, D.C., a chiropractor, because he is not an acceptable medical source under the Social Security Regulations. I agree. Plunkett received treatment by Skillen from September 2006 to January 2008 for treatment of neck and low back pain. (R. at 404-12, 426-28, 584.) Although the majority of Skillen's treatment notes are handwritten, and largely illegible, it is clear that Plunkett received regular and frequent treatment from him over a period of approximately 16 months. Thus, there is no doubt that Skillen was quite familiar with Plunkett's conditions and limitations. On August 20, 2007, Skillen opined that, due to Plunkett's injuries, she should not perform any type of employment that would involve the use of her shoulders, neck or lower spine, and that prolonged sitting severely aggravated her conditions and would cause them to worsen. (R. at 404.) Therefore, he stated that he would not recommend her for any type of employment considering the nature of her conditions. (R. at 404.) On January 7, 2008, Skillen completed a Medical Assessment Of Ability To Do Work-Related Activities (Physical), finding that Plunkett could lift and carry items weighing up to five pounds, stand and/or walk for a total of up to 15 minutes, sit for a total of 30 minutes and never climb, stoop, kneel, balance, crouch or crawl. (R. at 427-28.) Skillen further opined that Plunkett's abilities to reach, to handle and to push/pull were affected by her impairments. (R. at 428.) He also found that she was restricted from working around moving machinery, and he noted that because any activity caused flare-ups,

she must do only light activity in moderation. (R. at 428.) On February 7, 2008, Skillen wrote to Dr. Murray Joiner Jr., M.D., Plunkett's physiatrist, stating that chiropractic treatments relieved her symptoms, and as long as she received her weekly treatment, she was fairly stable and able to function on a daily basis. (R. at 584.) However, he further stated that Plunkett had flare-ups resulting in acute pain whenever she performed much activity outside of her normal lifestyle chores. (R. at 584.) Skillen, therefore, opined that Plunkett would not be able to sustain any type of gainful employment without sustaining frequent flare-ups. (R. at 584.)

Plunkett does not disagree that chiropractors are not considered acceptable medical sources under the Regulations. However, 20 C.F.R. §§ 404.1513(a), 416.913(a) provide that only acceptable medical sources can provide evidence to *establish* an impairment. Title 20 C.F.R. §§ 404.1513(d), 416.913(d) explain that "other sources," which is defined specifically to include chiropractors, may provide evidence to show the *severity* of a claimant's impairments and how it affects the claimant's ability to work. Clearly, such evidence is particularly important in determining a claimant's residual functional capacity. That being the case, treatment records and opinions from Skillen are relevant to the ALJ's determination of disability and he, therefore, had a duty to analyze this evidence and sufficiently explain any findings and rationale in crediting such evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. While the ALJ was correct in stating in his decision that Skillen was not an acceptable medical source, this was not a proper ground upon which to reject his opinions, as Skillen's opinions went to the severity of Plunkett's impairments and their effect on her ability to function, not to the establishment of the impairments themselves. Therefore, I cannot find that the ALJ's weighing of the medical evidence is supported by substantial

evidence. Also, I cannot find that substantial evidence supports the ALJ's residual functional capacity finding, as he failed to consider Skillen's findings and opinions and, therefore, did not consider all of the relevant evidence. Given these findings, I further find it unnecessary to address Plunkett's remaining argument, that the ALJ's residual functional capacity finding is not supported by substantial evidence for failure to consider the effect of her bilateral upper extremity impairments on her ability to work.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's weighing of the medical evidence;

2. Substantial evidence does not exist in the record to support the ALJ's physical residual functional capacity finding; and

3. Substantial evidence does not exist in the record to support the ALJ's finding that Plunkett was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Plunkett's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Plunkett's claims to the Commissioner for further consideration consistent with this Report and Recommendation.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: April 20, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE